Diane M. Saunders, Esq. (DS 6500)
MORGAN, BROWN & JOY, LLIP
200 State Street
Boston, MA 02109-2605
(617) 523-6666

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CARLA MANIGAULT** ) | |
| ) | Case No. CV 06-3337 (FB)(CLP) |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **DECLARATION OF LISA** |
| ) | **GICK IN SUPPORT OF** |
| **MACY'S EAST, LLC and** ) | **MOTION TO COMPEL** |
| **TERRY WHITTAKER,** ) | **ARBITRATION AND** |
| ) | **DISMISS PROCEEDINGS** |
| **Defendants.** ) | |
| ) | |

I, LISA M. GICK, declare pursuant to 28 U.S.C. §1746 under penalty of perjury that the following is true and correct:

1.    I am employed as Operating Vice President of Employee Relations for Federated Department Stores, Inc. ("Federated"). I submit this declaration in support of Defendants' Motion to Compel Arbitration and Dismiss Proceedings. This declaration is based upon my personal knowledge.

2.    In my capacity as Operational Vice President of Employee Relations, I am responsible for management and administration of Federated's Solutions InSTORE Early Dispute Resolution Program. I was responsible for the implementation of the Solutions InSTORE program in 2003. This included, for example, communications development,

training and infrastructure development, and management of staffing, budgeting and systems needs. I continue to supervise the Solutions InSTORE program and the three employees whose sole job is administering the program.

3.      Federated instituted the Solutions InSTORE Program, which was rolled out in Fall 2003 and effective in January 2004, for all then-current, non-unionized employees of all of Federated Department Stores, Inc. and all of its subsidiaries, including but not limited to, the non-unionized employees of Macy's East, LLC and the non-unionized Macy's store located at 5400 Avenue U, Brooklyn, New York 11234. *See Solutions InSTORE Plan Document attached as "Exhibit 1."*

4.      The Solutions InSTORE Program consists of a four step process. *See Ex. 1.* The employer is bound by decisions made at each step of the process. The first three steps (Steps 1-3) include reviews by local management, a senior human resources executive and a review by an employee peer panel or the Office of Solutions InSTORE. *See Ex. 1, pp. 3-4.* If an employee is not satisfied with a decision at any step, he or she can appeal the issue to the next step. *See Ex. 1, pp 1-2, 3-4.* Steps 1 through 3 apply to all employees. *Id.*

5.      The final step (Step 4) includes a provision providing for the final and binding arbitration of an employee's or the company's employment-related dispute. *See Ex. 1, pp. 5-20.* Step 4 applies to all employees unless an employee previously elected not to participate in arbitration. *See Ex. 1, pp 2, 5.*

6.      Before the effective date of the Solutions InSTORE Program, Federated created descriptive and explanatory information regarding the Solutions InSTORE

Program for dissemination to its employees and the employees of its various subsidiaries. This information included, but was not limited to, a video about the program, posters, and a detailed informational brochure for each employee describing the Solutions InSTORE Program. As part of the roll-out program, the Office of Solutions InSTORE directed each division to hold information sessions in their stores and locations with small groups of employees, where information about Solutions InSTORE was disseminated and a company representative would conduct presentations on the Solutions InSTORE program. These sessions were conducted to educate the employees about the Solutions InSTORE program and inform them about the future mailing they would be receiving from the Office of Solutions InSTORE. *A copy of the informational brochure is attached as "Exhibit 2."*

7.      Each Federated division had an Early Dispute Resolution Coordinator ("EDR Coordinator") who would have coordinated the roll-out of the Solutions InSTORE program to the respective division's employees.

8.      The Office of Solutions InSTORE directed each of Federated's subsidiaries to require its employees to attend one of these information sessions, and/or that the information be appropriately shared with any employee that was unable to attend one of those session for any reason (e.g., the employee was on a disability or personal leave while these sessions were being conducted).

9.      In September 2003, Federated conducted a mailing, regarding the Solutions InSTORE Program, from a list of all active employees within its PeopleSoft human resource system as of August 31, 2003. The mailing included the Plan Document,

3

an early dispute Resolution Program Election Form (the "2003 Election Form"), and a pre-addressed postage-paid return envelope. All these documents were in one envelope. *A copy of the 2003 Election Form is attached hereto as "Exhibit 3."*

10.    I personally reviewed the September 2003 Recipient List. My review revealed that Carla Manigault was included within this list and, therefore, was sent the September 2003 mailing at her last known address of record at 95 Miller Avenue #1, Brooklyn, NY 11207.

11.    As part of the September 2003 mailing process, Federated requested that Federated Systems Group ("FSG"), in its capacity as Federated's IT support division, generate personalized Election Forms that indicated each employee's name and division.

12.    FSG generated the Election Forms, which were printed at Financial, Administration and Credit Services (FACS), another Federated support division which conducted the September 2003 mailing. FACS routinely performs mailings for Federated and its subsidiaries. A first class, presorted rate was applied to each packet. FACS mailed the packets through the U.S. Postal Service to the employee addresses of record.

13.    The envelopes used in the September 2003 mailing had a return address in the upper left hand corner to the Solutions InSTORE Office in Ohio so that any mailing that was not delivered to the addressee would be returned, recorded and redirected to the employee.

14.    Our office had established a policy for all of the September 2003 mailings that were returned to us as undeliverable. If the mailing materials were returned by the U.S. Postal Service due to insufficient address or incorrect address information, the

4

policy provided that (1) a transmittal form was developed for each work location, which listed the name of the employees for whom mail was returned; (2) the mailed packets were overnighted to a designated individual at each work location; (3) the designated individual would provide that each packet was hand-delivered to the respective employee; and (4) the respective employee would sign and date the transmittal form acknowledging receipt. *See Undeliverable Mail Policy attached hereto as "Exhibit 4."*

15.     The Office of Solutions InSTORE has investigated the undeliverable mail records for Macy's East, LLC and the Macy's store located at Avenue U.  The investigation yielded no indication that the September 2003 mailing to Carla Manigault was ever returned by the U.S. Postal Service to my Office as undeliverable.

16.     The 2003 Election Form that was mailed to all employees advised that any employee who submitted the form declining to participate in arbitration would receive written confirmation by December 29, 2003 from the Office of Solutions InSTORE indicating acknowledgment of the employee's election to not participate in arbitration. *See Exhibit 3.* If the employee did not receive confirmation by that date, the Election Form advised the employee that he should send an email to the Solutions InSTORE office at solutions.instore@fds.com or contact the office by phone at 1-866-285-6689 informing the office that no confirmation had been received. *See Id.*

17.     Approximately ten percent of all eligible employees nationwide chose to opt out of arbitration by returning the September 2003 Election Form included in the September 2003 mailing to the Solutions InSTORE Office.

18.     For the September 2003 mailing, the Office of Solutions InSTORE tracked and managed contacts with the Office of Solutions InSTORE.  The Office retained records of employee contacts with the Office of Solutions InSTORE, whether by phone, voice mail, e-mail, or letter.

19.     My office has undertaken a careful and thorough search of all Solutions InSTORE records and there is no record that Ms. Manigault ever declined final and binding arbitration.

20.     In early January 2004, the Solutions InSTORE office sent all employees who had not returned the September 2003 Election Form a brochure welcoming them to the Program (the "You're in Good Company" welcoming brochure).  Employees who were sent this mailing received the welcome brochure at their last known address listed on our PeopleSoft system. *A copy of the "You're In Good Company" welcoming brochure is attached as "Exhibit 5."*  Because Federated had no record that Ms. Manigault had declined to participate, she was sent one of these brochures.  The January 2004 mailing was conducted in a similar fashion as described above for the September 2003 mailing.

21.     I personally reviewed the January 2004 mailing list and my review revealed that Carla Manigault was sent this brochure at her last known address on our PeopleSoft system at 95 Miller Avenue #1, Brooklyn, NY  11207.

22.     In October 2004, the Solutions InSTORE office sent all employees who had not opted out of final and binding arbitration in the Fall of 2003 another opportunity to consider their participation in Step 4 and an ability to opt out off arbitration going

6

forward. To that end, another information packet describing the Solutions InSTORE Program (the "We've Got You Covered" brochure), a newsletter regarding the Program (the "Opening the Door to More Information" newsletter) and another election form (the "2004 Election Form") were sent to employees who had not opted out of arbitration in 2003. *A copy of the "We've Got You Covered" brochure, the "Opening the Door to More Information" newsletter and the October 2004 Election Form are attached respectively as "Exhibit 6," "Exhibit 7" and "Exhibit 8."* Employees who wanted to change their election to now be excluded from final and binding arbitration were required to complete and return the form with a postmark no later than November 15, 2004. The October 2004 mailing was done in the same manner as described above for the September 2003 and January 2004 mailings.

23.    I have personally reviewed the October 2004 Mailing List and my review revealed that this mailing was sent to Ms. Manigault at her last known address on our PeopleSoft system at 95 Miller Avenue #1, Brooklyn, NY 11207.

24.    Again, for the October 2004 mailing, the Office of Solutions InSTORE kept records of all undeliverable or undelivered mail. My office has reviewed the undeliverable mail records for the October 2004 mailing, and the review has yielded no record of undeliverable mail to Carla Manigault.

25.    The October 2004 Election Form that was mailed to all employees advised that any employee who submitted the form declining arbitration would receive written confirmation by December 29, 2004 from the Office of Solutions InSTORE indicating acknowledgment of the employee's election to not participate in arbitration. *See Ex. 8.* If

7

the employee did not receive confirmation by that date, the Election Form indicated that the employee should send an email to the Solutions InSTORE office at solutions.instore@fds.com or contact the office by phone at 1-866-285-6689 informing the office that no confirmation had been received. *See Id.*

26.    For the October 2004 mailing, the Office of Solutions InSTORE tracked and managed contacts with the Office of Solutions InSTORE as done previously for the October 2003 mailing.

27.    My office has undertaken a careful and thorough search of all Solutions InSTORE records and there is no record that Ms. Manigault ever submitted an election form in 2004 electing to not participate in arbitration nor is there a record from our office indicating that Ms. Manigault ever contacted this Office in any other way to decline final and binding arbitration.


I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:        Cincinnati, Ohio
              December  4 , 2006


                                        Lisa M. Gick