```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
CARLA MANIGAULT,

                    Plaintiff,              MEMORANDUM AND ORDER
          -against-                          Case No. CV-06-3337 (FB) (CLP)

MACY'S EAST, LLC, and TERRY
WHITTAKER,

                    Defendants.
-------------------------------------------------x
```

*Appearances*

For the Plaintiff:
SAUL D. ZABELL, ESQ.
Zabell & Associates, P.C.
4875 Sunrise Highway, Suite 300
Bohemia, NY 11716

For the Defendants:
ALLISON K. ROMANTZ, ESQ.
RONALD S. ALLEN, ESQ.
Morgan, Brown & Joy LLP
200 State Street
Boston, MA 02109

**BLOCK, Senior District Judge:**

Plaintiff Carla Manigault ("Manigault") sues Macy's East, LLC ("Macy's") and Terry Whittaker ("Whittaker") for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and New York City Human Rights Law, N.Y.C. Admin. Code § 8-102. Defendants move to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). For the reasons that follow, the motion is denied.

## BACKGROUND

The following facts are taken from the parties' submissions; unless otherwise indicated, they are undisputed.

Manigault has been a Macy's employee since 2002. In the fall of 2003, Macy's parent company, Federated Department Stores, Inc. ("Federated"), launched a nationwide dispute resolution program called "Solutions InSTORE" ("SIS" or "the Program"). The Program has four steps: (1) informal grievance to local management team member; (2) senior management review; (3) review by peer panel or Program office; and (4) arbitration before the American Arbitration Association. Steps 1 through 3 cover all employees; employees may opt out of Step 4. The employer is bound by decisions made at each step; the employee may exhaust all steps.

Macy's asserts that before the Program took effect in January 2004, it was previewed for its employees through a series of informational meetings at each store; Manigault was employed during the period in which these meetings were presumably held and had a work schedule that would have required her to attend one of these meetings. *See* Decl. of Bertram Kamin ¶ 7. Although Manigault's lawyer admitted at oral argument that his client did attend such a meeting, *see* Tr. at 13-14,[1] he added that Manigault had told him that "it had nothing to do with opting out of the arbitration provision," *id.* at 14; indeed, Manigault swears that "[throughout] the term of [her] employment with [Macy's], [she] was never a party to a meeting wherein [she] was advised that it was necessary for [her] to 'opt-out' of [Macy's] mandatory arbitration policy," and "at no point in time has any employee of [Macy's] . . . ever explained [ ] to [her] that [she] was required to [do so]." Aff. of Carla Manigault dated Apr. 16, 2007 ("Manigault Apr. 17 Aff.") ¶¶ 3, 4.

---

[1] "Tr." refers to the transcript of oral argument held on April 12, 2007.

Macy's has submitted a declaration of Lisa Gick, the administrator of the Program, setting forth the process by which Federated employees were to decide whether to opt out of arbitration. *See* Decl. of Lisa Gick ("Gick Decl.") ¶¶ 9, 16, 22, 25. As she avers: In September 2003, the SIS office mailed all Federated employees a packet of information about the Program, including an Election Form explaining how to opt out; any employee who wished to do so had to so indicate on the Election Form and return it by October 31, 2003; if the employee did not thereafter receive a written confirmation of the employee's decision by December 29, 2003, the employee was to contact the SIS office by phone or email. *See id.*, Ex. 3 (Election Form). Gick asserts that in January 2004, the SIS office mailed Manigault a brochure "welcoming" her to the Program, *see* Gick Decl. ¶¶ 20, 21, and in October 2004, gave all employees who had not responded to the first mailing a second opt-out opportunity, similar to its September 2003 mailing. *Id.* ¶ 22.

Federated kept records of all employee responses to its mailings, but has no record of any response from Manigault; it also kept track of those mailings that were returned undelivered, but has no record that the mailings to Manigault did not reach her. *See id.* ¶¶ 9-15, 22-24. Indeed, Federated does not have any record of ever hearing from Manigault at all about anything to do with the Program prior to this litigation. *See id.* ¶¶ 18-19, 26-27. Although Federated never received an opt-out response from Manigault, it estimates that ten percent (10%) of its roughly 300,000 eligible employees nationwide did opt out. *See id.* ¶ 17; Tr. at 3.

Manigault asserts that "[she] did not, at any time, intend to enter into [an arbitration] agreement with Macy's," Aff. of Carla Manigault dated Jan. 8, 2007 ("Manigault Jan. 8 Aff.") ¶ 2, and denies receiving any of Federated's mailings about the Program. *See id.* ¶ 4 ("I never received any mailing regarding any arbitration agreement."). Claiming that she is not alone in this respect, her attorney has submitted the affidavits of two former Macy's employees who allegedly also did not receive such mailings. *See* Decl. of Christopher K. Collotta, Ex. B (Decl. of Tam Nguyen) ¶ 5 ("I never received the 'Early Dispute Resolution Form' . . . ."); *id.*, Ex. D (Aff. of Alan Singer) ¶ 4 ("I never received any mailing regarding any arbitration agreement or an 'opt-out' clause.").[2] In response, defendants have submitted the declarations of three Federated officials with direct knowledge of the company's regular employee mailing procedures and its prior mailings to Manigault. *See* Decl. of Tom Schneider ¶¶ 6-7 ("The mailing process for 2003 and 2004 mailing from [SIS] Office mirrored the process that is regularly used . . . to perform all other mass mailings from Federated"; moreover, "[n]one of the tax filing forms sent to Ms. Manigault at her home address were ever returned . . . as undeliverable"); Decl. of John Gruber ¶¶ 3-6, 11 (describing procedures for mailing retirement benefits statements to employees, and noting "no record of any of the mailings sent to Ms. Manigault ever having

---

[2] Tam Nguyen was the plaintiff in *Nguyen v. Federated Department Stores, Inc.*, No. 05 Civ. 0140 (Report & Recommendation dated July 12, 2005 ("*Nguyen* R&R")), *adopted*, 2006 WL 149051 (N.D. Ga. Jan. 19, 2006). Alan Singer is the plaintiff in a similar suit currently before Judge Seybert. *See Singer v. Macy's East LLC, et al.*, No. 06 Civ. 5542 (E.D.N.Y.) (motion to dismiss and compel arbitration pending).

4

been returned as undeliverable"); Decl. of Sue Lister ¶¶ 4-6, 13 (describing procedure for mailing information regarding health care benefits and noting "there is no record of any of the mailings to Ms. Manigault being returned").

In or around August 2004, prior to the second opt-out mailing, Whittaker allegedly began to sexually harass Manigault; she complained to a Macy's executive in September 2004 and then to Macy's director of human resources in December 2004; the harassment did not stop, and she was subsequently demoted. On July 10, 2006, she filed the present action.

## DISCUSSION

### I

The FAA "makes enforceable all arbitration agreements concerning transactions relating to [interstate or foreign] commerce." *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir. 1972). For such agreements, the FAA applies to "all questions of interpretation, construction, validity, revocability, and enforceability." *Id.* Inasmuch as Macy's is a national retailer, the parties do not dispute that the FAA governs here.

The use of arbitration in the employment context has been the subject of considerable debate for over a decade. Critics argue that arbitration is inherently unfair to employees "because [the] typical characteristics of an arbitration proceeding (the ability to select the arbitrator, the limited availability of discovery, the lack of an appeal ...) unfairly disadvantage individuals," and because arbitration clauses are often "drafted in a one-sided manner to favor the corporation at the expense of the individual." Christopher R. Drahozal,

5

*"Unfair" Arbitration Clauses*, 2001 U. Ill. L. Rev. 695, 705 (2001); *see also* David S. Schwartz, *Enforcing Small Print to Protect Big Business*, 1997 Wis. L. Rev. 33, 38 (1997) ("[A]dhesive pre-dispute arbitration clauses systematically favor corporate defendants over adherents ... to the point that arbitration clauses function as a kind of corporate self-deregulation."). Proponents argue that "arbitration of employment disputes should be encouraged as an alternative . . . that offers the promise of a less expensive, more expeditious, less draining and divisive process, and yet still effective remedy." Samuel Estreicher, *Predispute Agreements to Arbitrate Statutory Employment Claims*, 72 N.Y.U. L. Rev. 1344, 1349 (1997); *see also* Jeremiah A. Byrne, Note, *"Another Day" Has Come and Gone*, 40 Brandeis L.J. 163, 182 (2001) ("[A]rbitration is less expensive and faster than using the judicial system, the proceedings are almost always conducted in private, and it can maintain goodwill between the parties.").

In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Supreme Court "reject[ed] the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context," and held that "arbitration agreements can be enforced under the FAA without contravening policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Id.* at 123 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 30-32 (1991)). Two years earlier, the Second Circuit noted that § 118 of "[t]he Civil Rights Act of 1991 [ ] added a provision on arbitration to Title VII stating that '[w]here appropriate and to the extent authorized by law, the use of ... arbitration[ ] is encouraged' to resolve

Title VII claims," and "conclud[ed] – as did the Third, Fourth, and Seventh Circuits – that the text of § 118 evinces a plain Congressional purpose of encouraging arbitration of Title VII claims and not one of precluding such arbitration." *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 203, 204-05 (2d Cir. 1999) (citations omitted).

That Congress chose to encourage the use of arbitration in the Title VII context does not imply, however, that all disputes arising in that context will be resolved through arbitration. For example, the Second Circuit recently held that the Supreme Court's decision in *Adams*, which involved an individual employment contract, did not overrule the circuit court's prior precedent that "mandatory arbitration clauses in collective bargaining agreements are unenforceable to the extent they waive the rights of covered workers to a judicial forum for federal statutory causes of action." *Pyett v. Pennsylvania Bldg. Co.*, ___ F.3d ___, 2007 WL 2189126, at *1 (2d Cir. Aug. 1, 2007) (reaffirming *Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000)). Even outside the collective-bargaining arena, an employee cannot be compelled to arbitrate a dispute in the absence of an agreement to do so. As the Supreme Court has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis added).

Whether there is an agreement to arbitrate is determined by state contract law. *See id.* at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that

govern the formation of contracts."). Both Macy's and Manigault agree that New York law should apply to the present action. *See* Def.'s Mem. in Supp. at 10 (citing "ordinary New York state-law contract principles"); Pl.'s Mem. of Law in Opp'n at 4-6 (citing New York contract cases).

## II.

"In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (internal citations omitted).

In opposition to defendants' motion, Manigault argues that (1) she never received the mailings or otherwise had any knowledge of the opt-out aspect of the Program; (2) even assuming, *arguendo*, that she received the mailings or otherwise knew of the Program, her silence could not, as a matter of law, constitute acceptance of its terms; and (3) in any event, Macy's arbitration clause does not cover her claims because it "makes no reference to the civil rights statutes or to discrimination claims in general," Pl.'s Mem. of Law in Opp'n at 6.

### A. Scope of Program

Manigault's last argument is patently without merit. The Second Circuit has held that "the existence of any broad agreement to arbitrate creates a presumption of arbitrability" and that "[d]oubts should be resolved in favor of coverage." *Paramedics*

*Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (internal quotation marks and citation omitted). Here, there can be no doubt that Manigault's claims would be covered by the scope of the Program – if an arbitration agreement exists – since Macy's arbitration clause clearly states that "all employment-related legal disputes, controversies or claims arising out of or relating to, employment . . . shall be settled exclusively by final and binding arbitration." *See* Gick Decl., Ex. 1 (Plan Document) at 5.

## B. Notice of Program

With respect to Manigault's notice argument, New York law recognizes a rebuttable presumption that

> when . . . there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption. There must be – in addition to denial of receipt – some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable.

*Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (citing *Nassau Insurance Co. v. Murray*, 46 N.Y.2d 828, 829-30 (1978)).

The declarations of Federated's personnel responsible for employee mailings have established a rebuttable presumption that Manigault received the Program information allegedly mailed to her. *See Meckel*, 758 F.2d at 817 ("[U]nder New York law, personal knowledge is required only to establish regular office procedure, not the particular mailing."

(citing *Bossuk v. Steinberg*, 58 N.Y.2d 916, 919 (1983))). To overcome this presumption, Manigault offered the affidavits of two employees asserting that they too never received the presumptive mailings; she asserts, therefore, that she is entitled to a hearing on the notice issue and "should be permitted to conduct discovery as to whether or not Defendant deviated from its established mailing protocol, and as to whether [it] acted in a careless manner with respect to the alleged 2003 and 2004 mailings." Pl.'s Mem. of Law in Opp'n at 3-4.

The Court need not decide whether Manigault should be afforded the opportunity to conduct discovery in a further effort to overcome the presumption of mailing, or given a hearing on the notice issue: As now explained, Manigault cannot be compelled to arbitrate her dispute, even if she had received all of the mailings and was told explicitly of the opt-out procedure at the meeting she attended, since her silence and inaction cannot be construed as an agreement to arbitrate.

### C. Silence as Acceptance

It is a fundamental tenet of contract law that "[w]here the recipient of an offer is under no duty to speak, silence, when not misleading, may not be translated into acceptance merely because the offer purports to attach that effect to it." *Albrecht Chemical Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 440 (1949). This bedrock principle is set forth in § 69(1) of the Restatement (Second) of Contracts, which reflects the law of New York. *See Albert Chemical*, 298 N.Y. at 440 (citing Restatement (First) of Contracts § 72(1), carried forward *verbatim* into § 69(1)); *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972) ("New York law

10

on silence as acceptance is firmly supported by the Restatement of Contracts.").

> Section 69(1) of the current Restatement provides:
>
> (1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:
>
> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
>
> (b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
>
> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

Restatement (Second) of Contracts § 69(1). Defendants rely on § 69(1)(b) and (c).

**1. Silence as Acceptance – Offeree Intends to Accept Offer**

With respect to the circumstances contemplated in subsection (b), the drafters of the Restatement explained:

> The mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting. But the offeree is entitled to rely on such a statement *if he chooses*. . . . Even though the intent to accept is manifested only by silent inaction, however, the offeror who has invited such an acceptance cannot complain of the resulting uncertainty in his position.

*Id.* § 69 cmt. c (emphasis added).

Defendants argue that "Macy's multiple mailings to Plaintiff with clear instructions on what steps she needed to take if she wished to opt out of arbitration

unquestionably put [her] on notice that she was obligated to notify Macy's if she did not intend to accept the arbitration agreement," and that "[b]y failing to do so, she is deemed to have accepted [it]." Def.'s Mem. of Law in Supp. at 12-13. At oral argument, defendants' counsel contended that even one such mailing would have been sufficient to bind Manigault by her silence. *See* Tr. at 16 ("I think there is a requirement to do it once.").

As the drafters' commentary makes clear, subsection (b) addresses the situation where the offeree *intends* to rely on the offer *"if he chooses,"* in which event the offeror cannot renege on the offer. Subsection (b), therefore, addresses the situation where the offeror seeks to avoid a contract which the offeree, by silence, has chosen to enter into and not, as here, where the offeree seeks to create a contract based on the offeree's silence.

## 2. Silence as Acceptance – Previous Dealings or Otherwise

With respect to subsection (c), the drafters of the Restatement clarified the meaning of the phrase "previous dealings or otherwise" as follows:

> [An] [e]xplicit statement by the offeree, usage of trade, or a course of dealing between the parties may give the offeror reason to understand that silence will constitute acceptance. In such a situation the offer may tacitly incorporate that understanding, and ... [u]nder Subsection (1)(c)[,] the offeree's silence is acceptance, regardless of his actual intent, unless both parties understand that no acceptance is intended.

Restatement (Second) of Contracts § 69 cmt. d; they also provided the following illustrations:

> A, through salesmen, has frequently solicited orders for goods from B, the orders to be subject to A's personal approval. In every case A has shipped the goods ordered within a week and without other notification to B than billing the goods to him on shipment. A's salesman solicits and receives another order

12

> from B. A receives the order and remains silent. B relies on the order and forbears to buy elsewhere for a week. A is bound to fill the order.
>
> A has for years insured B's property against fire under annual policies. At the expiration of one policy, in accordance with the usual practice, A sends B a renewal policy and a bill for the premium. B retains the policy for two months and then refuses to pay the premium on demand. B is liable for the premium accrued prior to his rejection.

*Id.* § 69 cmt. d, illus. 5, 6.

Consistent with subsection (c), New York has recognized that "[w]hen a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence," *Tanenbaum Textile Co. v. Schlanger*, 287 N.Y. 400, 404 (1942) (internal quotation marks and citation omitted), and that a duty to speak "may be created by a course of conduct . . . which gives the offeror reason to understand that silence will constitute acceptance." *Russell v. Raynes Assocs. Ltd. P'ship*, 569 N.Y.S.2d 409, 414 (1st Dep't 1991) (internal citations omitted); *see also Ahern v. South Buffalo Ry. Co.*, 303 N.Y. 545, 563 (1952) (holding employer could not "validly urge that it should be permitted to make payments . . . without having its silence construed as an acceptance of the employee's offer to compromise the claim"); *Daimon v. Fridman*, 773 N.Y.S.2d 441, 442 (2d Dep't 2004) ("The defendant's conduct in accepting [an additional] payment and in depositing [a] down payment check constituted an acceptance of the plaintiff's counteroffer."); *John William Costello Assocs., Inc. v. Standard Metals Corp.*, 472 N.Y.S.2d 325, 328 (1st Dep't 1984) (holding defendant accepted plaintiff's written offer

when it "accepted the benefits of the plaintiff's services"); *Catz Am. Sales Corp. v. Holleb & Co.*, 74 N.Y.S.2d 485, 488 (1st Dep't 1947) (holding respondent agreed to arbitration through course of conduct in which his "broker . . . conducted other transactions [o]n [his] behalf[,] . . . in each of these transactions a confirmation of sale was issued containing the same arbitration clause . . . and that [ ] arrangement was never questioned by respondent").

Defendants argue that its prior course of dealing obliged Manigault to notify Macy's of her intent to reject arbitration because Macy's had (1) "explicitly informed . . . all its employees, including [ ] Manigault, at small group meetings that they would need to return the election forms . . . if they wished to opt out of final and binding arbitration"; and (2) described "the express terms of the [opt]-out process . . . on the election forms themselves." Def.'s Reply Mem. at 8. Although Manigault disputes these allegations, they would, even if true, establish only *Macy's* unilateral conduct. The only "conduct" attributable to *Manigault* was her compulsory attendance at an informational meeting; even if it be assumed that Macy's fully explained its offer to arbitrate and the opt-out procedure at that meeting, Manigault's attendance did not give rise to a "course of dealing" for the simple reason that she did not say or do anything that could have given Macy's "reason to understand that [her] silence [would] constitute acceptance." *Russell*, 569 N.Y.S.2d at 414.

Similarly, that Macy's "previously mailed [Manigault] . . . numerous important employment-related materials," Def.'s Reply Mem. at 8, would only be relevant if those materials conveyed offers that, though not expressly accepted by Manigault, nevertheless conferred benefits that she retained. Only under those circumstances, not alleged here,

14

could Macy's reasonably argue that previous dealings had justified their interpretation of her silence as acceptance. *See, e.g., Catz*, 74 N.Y.S.2d at 488 (holding that respondent who had retained benefits from prior contracts containing arbitration clause was estopped from challenging identical clause in dispute arising from subsequent contract).

### 3. Other Cases Distinguished or Not Followed

The Court is aware of a number of other cases involving similar or identical circumstances where Macy's and other employers have succeeded in compelling arbitration. *See Nguyen* R&R; *Dubois v. Macy's East Inc.*, Case No. 06-CV-6522 (E.D.N.Y.) (pending Report and Recommendation dated July 13, 2007 ("*Dubois* R&R")); *Hicks v. Macy's Department Stores, Inc.*, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002); *Garrett v. Circuit City Stores, Inc.*, 338 F. Supp. 2d 717 (N.D. Tex. 2004), *rev'd on other grounds*, 449 F.3d 672 (5th Cir. 2006); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279 (N.D. Ala. 2000). Indeed, the Court is not aware of any case that has rejected an employer's effort to impose binding arbitration based solely on its employees' silence.

Two of these cases arguably represent facts where there was some objective inconsistent conduct or other indicia of intent to accept the offer. Thus, in *Najd*, the Ninth Circuit relied on the fact that the employee had signed an "acknowledgment form," *Najd*, 294 F.3d at 1109, and in *Dubois*, the magistrate judge noted that "most damaging to plaintiff's claim that he elected to opt-out of arbitration is the letter he wrote requesting the assistance of SIS . . . to resolve . . . the very dispute which gives rise to the instant complaint . . . ten months after he was 'welcomed' to the program." *Dubois* R&R at 8.

To the extent that the other cases may be viewed as indistinguishable from the present case, the Court chooses not to follow them because it is of the opinion that no unilateral conduct on the part of an offeror, regardless of how extensive or well-intentioned, can ever be the basis for the creation of a binding agreement in the face of an offeree's utter silence and inaction. Those cases that have held otherwise have compromised the time-honored principle of contract law that "[i]t is certain that, if the only facts are that A makes an offer to B and B remains silent, there is no contract." 1 Arthur Linton Corbin & Joseph M. Perillo, *Corbin on Contracts* (revised ed. 1993) § 3.18. As *Corbin* wisely explains:

> Silence may indicate that the offeree did not hear or receive or understand the offer, or that the offer was still under consideration. It may instead indicate that the offeree preferred to give no thought to the offer and to waste no time and effort in making a reply, whether orally or by a writing. In such cases, the offeror is not reasonable in giving to the offeree's mere silence an interpretation that the offeree accepts.

*Id.*[3]

To its credit, Macy's has not conditioned the continuation of its current employees' employment on requiring them to agree to arbitration, and the Court need not decide whether it would give its approbation to such heavy-handed conduct. *But see Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374-76 (11th Cir. 2005) (holding that continued employment constituted acceptance of mandatory arbitration policy under

---

[3]There are other reasons why it might be dangerous for Macy's to ascribe assent to its employees' silence: Some of its employees may not be fluent in English and, therefore, may not have comprehended Macy's mailings. Notably, at oral argument, Macy's counsel conceded that she did not know whether the opt-out form and written instructions were provided in any language other than English. *See* Tr. at 21-22.

16

Georgia law, and citing similar decisions from the Fifth and Seventh Circuits under Louisiana, Mississippi and Wisconsin law); *Garrett*, 338 F. Supp. 2d at 720 (same under Texas law). Although Macy's has advised the Court that its current policy is to require arbitration of all employee grievances as a condition of employment for new employees, *see* Tr. at 22, it fairly and admirably offered its existing employees a choice between an arbitral and a judicial forum. Be that as it may, Macy's employees' silence and inaction cannot constitute acceptance of its offer to arbitrate.

## CONCLUSION

Defendants' motion to compel arbitration is denied.

**SO ORDERED.**

/signed/

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 28, 2007